GLORIA TSUI-YIP
WENDI OPPER UZAR
Miskin & Tsui-Yip LLP
1350 Broadway, Suite 802
New York, New York 10018
(t) (212) 268-0900
(f) (212) 268-0904
Gloria@mt-iplaw.com

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------X
9089756 CANADA, INC.                                              :
                                                                 :
                          Plaintiff,          :          Civil Action No. 15-cv-6098
                                                                 :
          - against -                            :
                                                                 :
JEFFERSON PAULO KOPPE,                           :
                                                                 :
                          Defendant.          :
--------------------------------------------------------------X

**COMPLAINT**

Plaintiff, 9089756 Canada, Inc. (hereinafter "Plaintiff") complains of the Defendant

Jefferson Paulo Koppe (hereinafter "Defendant" or "Koppe") as follows:

**THE PARTIES**

1.      Plaintiff is a corporation organized under the laws of Canada, with its principle

office at 8515 Devonshire Place, Suite 205, Town of Mount Royal, province of Quebec, H4P

2K1, Canada, and having a warehouse in the State of New York.

2.      Defendant is an individual who is a citizen of Brazil.  On information and belief,

Defendant resides at Rua Dona Alice Tribirica, 411, Apto 302, Curitiba, P-R, 80730-320, Brazil.

3.      On information and belief, Defendant is doing business as ConsoleTuner and

owns and operates the website www.consoletuner.com (hereinafter "Defendant's Website").

## JURISDICTION AND VENUE

4.      This action arises under the Declaratory Judgment Act, 28 U.S.C. § 2201, the copyright laws of the United States, 17 U.S.C. § 101 *et seq.*, and the common laws of the State of New York.

5.      Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1331 and 1338(a). This Court has supplemental jurisdiction over the pendent state law claims under 28 U.S.C. § 1367.

6.      On information and belief, venue as to Koppe is proper in this judicial district pursuant to 28 U.S.C. § 1391 and as set forth herein.

7.      Plaintiff does business globally, and particularly in the United States, the State of New York, and this District.

8.      On information and belief, defendant Koppe, either individually or through his agents, distributors, retailers and/or employees, transacts or is doing business within the State of New York and this judicial district, including via the internet, soliciting business in, marketing to, selling, and shipping goods into the State of New York. Accordingly, jurisdiction over Koppe is proper in accordance with N.Y. C.P.L.R. § 302(a)(1) and the exercise of such jurisdiction comports with due process.

9.      On information and belief, defendant Koppe, either individually or through his agents, distributors, retailers and/or employees, committed a tortious act, namely, copyright infringement, both outside and inside New York that caused injury within the State of New York; Koppe expected or should have reasonably expected its actions to have consequences in the State of New York; and Koppe derives substantial revenue from intrastate and interstate commerce.  Therefore jurisdiction over Koppe is proper in accordance with N.Y. C.P.L.R. § 302(a)(3) and the exercise of such jurisdiction comports with due process.

2

10.     On information and belief, defendant Koppe operates a highly interactive website that contains an online discussion forum, allows users to contact Koppe and/or his agents and/or employees, via e-mail and directly through the website; allows users of defendant's infringing product to download necessary and infringing software and firmware updates directly through the website; contains links to Defendant's Amazon "store" and other purportedly third-party websites, some of which are in partnership with Koppe, where consumers are directed in order to purchase the infringing product; contains a contact link for individuals who "would like to be a retailer . . . and appear on this page"; and is aimed or directed at individuals living within the State of New York and this district.  Therefore, jurisdiction over Koppe is proper in accordance with N.Y. C.P.L.R. § 302(a), and the exercise of such jurisdiction comports with due process.

## FACTS COMMON TO ALL CLAIMS

11.     This dispute revolves around a "video game controller transformation system" in the form of a USB plug-in device that allows for the cross-compatibility of gamepads or game controllers, i.e., it allows "gamers" to use a single game controller on different video game platforms (e.g., Sony PlayStation, Microsoft X-Box, and PCs) (the "Device").  The unique functionality of the Device is made possible by original and copyrightable computer source codes that reside on the Device ("firmware") and on a computer ("software") that interacts with the Device (together, the "Device Intellectual Property").  The Device requires periodic connections via the Internet to a host computer server(s) for maximum functionality.

12.     While the Device and the computer source codes that work with the Device were originally created by Defendant Koppe, all intellectual property rights in the Device have been contractually and validly transferred to Plaintiff.

13.     From around 2010 through early 2012, Defendant Koppe commercialized and marketed the Device, originally called the "Gamepad Proxy," and later called "Cronus," using firmware and software (i.e., computer source code) originally authored by Koppe.

14.     On or about June 25, 2012, Defendant and RaptorStrike, Inc. ("RaptorStrike") formed Techart LLC ("Techart"), a Florida Limited Liability Company.  In accordance with the Techart Operating Agreement, Techart was intended to be in "the business of developing, manufacturing and distributing" the Device.

15.     Under the terms of the Techart Operating Agreement, Koppe and RaptorStrike are the only members, owning 33% and 67%, respectively, with Alexander Golubev, a principal of RaptorStrike, initially serving as sole manager.  Koppe was later added as a co-manager.

16.     Under the Techart Operating Agreement, Defendant Koppe transferred the Device Intellectual Property and all of his rights therein to Techart in exchange for his membership interest in Techart.  Additionally, under the Techart Operating Agreement, all intellectual property later developed by a member in connection with the Device belongs to Techart.

17.     As of June 25, 2012, Koppe no longer had any individual ownership interest or rights in the Device or the Device Intellectual Property, or any derivatives thereof he later developed while a member of Techart.

18.     Upon information and belief, in or around March 2013, Koppe left the United States for Brazil, taking with him the original Device Intellectual Property, which then belonged solely to Techart.

19.     After leaving the United States, Koppe shut down the original computer servers, making it impossible for the Device to interact with them, thus rendering the Device ineffective.

20.     On or about May 10, 2013, Koppe resigned as a manager of Techart, but remained a member of Techart until at least January 2014.

21.     On or about April 17, 2015, Techart assigned to Plaintiff all rights, title and interest in the Device, including all intellectual property rights, applications and registrations, the Device Intellectual Property, except Techart's rights, title and interest in U.S. Provisional Patent Application No. 61/655,401 ("'401 Patent Application") and related patent applications or registrations (the "Assignment").

22.     The Assignment also transferred Techart's rights, title and interest in all causes of action and enforcement rights, including for past, current and future infringement of the Device and its associated intellectual property to Plaintiff, except as to the '401 Patent Application.

23.     Plaintiff and/or Techart has marketed and sold the Device together with the Device Intellectual Property, under the marks "Gamepad Proxy," "Cronus," "Cronus Config," and/or CronusMax since at least 2012.[1]

24.     Upon information and belief, since the end of 2013, Koppe has been marketing competing and infringing versions of the Device (the "Derivative Devices"), without the permission or authorization of Techart or Plaintiff.  One of the Derivative Devices is marketed as "Titan One."  These Derivative Devices use source codes that belong to Techart and/or Plaintiff, or are derivative of the Device Intellectual Property owned by Plaintiff.

25.     Upon information and belief, Koppe and/or his agents have sold the Derivative Devices within New York State and this district.

---

[1] Gamepad Proxy and Cronus Config refer to the software.  Cronus and CronusMax refer to the firmware and/or the physical Device itself.

26.     Koppe filed and obtained Copyright Registration No. TX0007996178, with a registration date of August 26, 2014, for a computer program titled "Gtuner Pro," which is the software that works with the "Titan One" Derivative Device (the "'178 Registration").

27.     On information and belief, the "Gtuner Pro" software and Titan One firmware are substantially similar to and derived from the Device Intellectual Property owned by Techart and/or Plaintiff.

28.     Upon information and belief, Defendant has been selling the Derivative Devices, including the "Titan One" firmware and "Gtuner Pro" software, directly and/or indirectly through Defendant's Website and/or other online stores.

29.     On or about May 26, 2015, Defendant submitted a "take-down notice" with Amazon.com, which resulted in the removal of all listings for Plaintiff's "CronusMax" product, i.e., the Device and Device Intellectual Property owned, marketed and sold by Plaintiff.  On information and belief, the basis of the take-down was Defendant's '178 Registration.

30.     Defendant's Website includes a webpage that takes aim at Plaintiff's products, reputation and legal rights. Specifically, Defendant's Website contains statements alleging that Plaintiff has no commercial rights in the Device, and has been "counterfeiting" the Device and "pirating" the original software.  Defendant's Website also expressly accuses Plaintiff and/or its agents of "unlawful modification and distribution of copyrighted material," "unauthorized reproduction of copyrighted work" and "circumventing access-control measures."

31.     Through these and other statements on Defendant's Website, Koppe claims that Plaintiff is engaging in illegal business activity and selling illegal counterfeit products.

32.     On the basis of Koppe's allegations that Plaintiff and/or its agents is committing "willful counterfeiting," "willful piracy," copyright infringement and "intellectual theft," Defendant's Website expressly urges readers not to purchase Plaintiff's Device.

33.     Between at least from October 2014 and through March 2015, Koppe has repeated these allegations by commenting in online forums, claiming that Plaintiff is not a real company and is pirating, counterfeiting, and otherwise committing copyright infringement.

<u>COUNT I</u>
<u>DECLARATION OF COPYRIGHT OWNERSHIP</u>

34.     Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 33 as if fully set forth herein.

35.     There exists an actual controversy between Plaintiff and Koppe as to ownership of the '178 Registration, especially insofar as Koppe has obtained a copyright registration for source code derived from Plaintiff's intellectual property rights, has filed take-down notices against Plaintiff leading to the successful removal of Plaintiff's products from Amazon.com, and has elsewhere claimed that Plaintiff has engaged in copyright infringement.

36.     While Koppe was a member of Techart, any and all works of authorship that relate to the Device and/or the Device Intellectual Property, including the source code, software and/or firmware for Koppe's Derivative Devices, and all copyrights therein were owned by Techart in accordance with the Techart Operating Agreement.

37.     Koppe does not own any copyright in connection with the Device or Derivative Devices, which Koppe knew or should have known, at all relevant times.

38.     The Assignment validly and effectively transferred all copyrights in the Device Intellectual Property to Plaintiff, and therefore, Plaintiff is the true and rightful owner of any and

all copyrights in the Device Intellectual Property and all derivative source code used for, by or in connection with Defendant's infringing Derivative Devices.

39.     Defendant's "Gtuner Pro" source code, which is the subject of the '178 Registration, is derived from the original source code for the Device.

40.     Plaintiff has been injured and continues to be injured by Defendant's actions, including the filing and issuance of the '178 Registration, the filing of take-down notices against Plaintiff's legal products based on this copyright registration, and Defendant's public comments regarding copyright ownership and alleged infringement, which have resulted in lost sales and lost business opportunities.

41.     Plaintiff has been damaged by Defendant's actions in an amount as yet unknown. Further, Plaintiff has been and, unless Defendant is enjoined, will be irreparably harmed by Defendant's continuing assertion of copyright rights in connection with the Device and Derivative Devices.

## COUNT II
## DECLARATION OF NON-INFRINGEMENT OF COPYRIGHT

42.     Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 41 as if fully set forth herein.

43.     There exists an actual controversy between Plaintiff and Koppe as to infringement of the '178 Registration, especially insofar as Koppe has successfully removed listings of Plaintiff's products from Amazon.com on the basis that they allegedly infringe the '178 Registration, and Defendant's Website claims that Plaintiff and/or its agents are committing willful copyright infringement and that Plaintiff's goods are counterfeits.

44.     Plaintiff is the owner of all copyrights in connection with the Device and the Derivative Devices.

8

45.     As the true and legitimate owner of all copyrights in connection with the Devices and Derivative Devices, Plaintiff is not infringing any of Koppe's alleged copyright(s).

46.     Koppe knowingly and materially misrepresented to Amazon.com that Plaintiff's products were infringing Koppe's alleged copyright(s).

47.     Amazon.com relied upon Defendant's misrepresentation when it removed Plaintiff's listings or otherwise disabled access to Plaintiff's legitimate and original products.

48.     Plaintiff has been damaged by Defendant's actions in an amount as yet unknown. Further, Plaintiff has been and, unless Defendant is enjoined, will be irreparably harmed by Defendant's continuing assertion of copyright infringement against Plaintiff.

49.     As a direct and proximate result of Defendant's knowing misrepresentation that Plaintiff's products sold on Amazon.com are infringing, Plaintiff has been harmed and is entitled to recover its damages, including costs and attorneys' fees, attributable to the misrepresentation pursuant to § 512(f) of the Copyright Act, in an amount to be established at trial.

## COUNT III
## COPYRIGHT INFRINGEMENT

50.     Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 49 as if fully set forth herein.

51.     This count arises under the United States Copyright Act, 17 U.S.C. § 101 *et seq*.

52.     When the Device was first developed, its underlying computer programs were original works of authorship protectable under § 102 of the Copyright Act.

53.     The copyrightable computer programs were fixed in the underlying software and firmware of the Device.

54.     The copyrightable computer programs were published insofar as the Device that utilizes the computer programs has been sold throughout the United States and elsewhere.

55.     Plaintiff owns all copyrights pertaining to the Device and the Device Intellectual Property by virtue of the Assignment, and has the exclusive rights to reproduce, distribute and prepare derivative works, and to authorize others to reproduce, distribute and prepare derivative works under § 106 of the Copyright Act.

56.     Plaintiff owns all copyrights in connection with all Derivative Devices that Defendant authored while he was a member of Techart, and has the exclusive rights to reproduce and distribute such Derivative Devices under § 106 of the Copyright Act.

57.     When Koppe left the United States, he took with him the original Device Intellectual Property, and therefore had access thereto.

58.     Koppe has infringed and continues to infringe Plaintiff's copyrights by reproducing and distributing computer programs that are either reproductions of the Device Intellectual Property or derivatives thereof, insofar as Defendant's computer programs contain a substantial amount of identical and/or substantially similar computer code.

59.     Koppe has reproduced and distributed the reproduction(s) and/or derivative works without the permission, authorization, license or consent of Plaintiff and/or Techart.

60.     Defendant's unauthorized reproduction(s) and/or derivative works copy a probative amount of the original, protectable elements of Plaintiff's computer program in a substantial and wrongful manner.

61.     Defendant reproduced and distributed the Device Intellectual Property and/or unlawful derivative works with actual knowledge that the copyright in the protectable elements of the Device Intellectual Property was and is owned by Techart and its assigns, i.e., Plaintiff.

62.     Defendant's reproduction and distribution of the Device Intellectual Property and/or unlawful derivative works amounts to deliberate and willful copyright infringement.

63.     Plaintiff has been damaged by Defendant's actions in an amount as yet unknown and Defendant is further continuously damaging Plaintiff in a manner wherein Plaintiff has no adequate remedy at law and Defendant's acts, if continued, will damage Plaintiff in an amount as yet unknown.

64.     As a direct and proximate result of the foregoing acts of infringement by Defendant, Plaintiff has been harmed and is entitled to recover its damages and Defendant's profits attributable to the infringement pursuant to § 504 of the Copyright Act, in an amount to be established at trial.

65.     Plaintiff has been and, unless Defendant is enjoined, will be irreparably harmed by the continuing infringement of Plaintiff's copyright.

## COUNT IV
## DEFAMATION

66.     Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 65 as if fully set forth herein.

67.     This count arises under the common laws of the State of New York, and is hereby raised with the substantial and related claims under the Declaratory Judgment and Copyright Acts, pleaded in Counts I, II, and III herein.

68.     Defendant has published statements on Defendant's Website and on Internet forums on his own and third-party-owned websites that accuse Plaintiff and/or its agents of, *inter alia*, "unlawful modification and distribution of copyrighted material," "unauthorized reproduction of copyrighted work," "circumventing access-control measures," "willful counterfeiting," and "willful piracy."

69.     Defendant has further published online statements that describe Plaintiff's goods as being counterfeits, containing malware, and compromising the security of users' computers.

70.    These statements made by Defendant are and always have been false.

71.    Defendant made these statements with actual malice insofar as Koppe had actual knowledge that he was still bound by the Techart Operating Agreement, in which he assigned all intellectual property rights, including copyrights, in connection with the Device to Techart.

72.    Defendant's false statements are defamatory *per se* insofar as they allege that Plaintiff and/or its agents have previously and/or are currently engaged in criminal conduct.

73.    Defendant's false statements are defamatory *per se* insofar as they allege that Plaintiff's goods are unlawful and contain malware.

74.    As a direct and proximate result of these defamatory statements, Plaintiff has been harmed in an amount as yet unknown and Defendant is further continuously damaging Plaintiff in a manner wherein Plaintiff has no adequate remedy at law and Defendant's acts, if continued, will damage Plaintiff in an amount as yet unknown.

75.    Plaintiff has been and, unless Defendant is enjoined, will be irreparably harmed by the defamatory statements which will otherwise remain published on Defendant's Website and elsewhere on the Internet.

**WHEREFORE**, Plaintiff prays for judgment against Defendant as follows:

A.    That the Court declare that Plaintiff has not and is not infringing Defendant's copyright;

B.    That the Court declare that Plaintiff is the true owner of both the original computer programs, as utilized in connection with the Device owned by Plaintiff, and the derivative computer programs, as utilized in connection with Defendant's Derivative Devices;

C.    That the Court order the U.S. Copyright Office to transfer ownership and title in Copyright Registration No. TX0007996178 to Plaintiff, 9089756 Canada, Inc.;

D.      That Defendant, his employees, officers, directors, agents, servants and all others in privity, be preliminarily and permanently enjoined from directly or indirectly infringing Plaintiff's copyright, including from reproducing and distributing the original computer programs, or any derivative thereof, and from reproducing and distributing the computer program that is the subject of Copyright Registration No. TX0007996178, or any derivative thereof;

E.      That Defendant, his employees, officers, directors, agents, servants and all others in privity, be preliminarily and permanently enjoined from defaming Plaintiff and from disparaging Plaintiff's products, including ordering Defendant to delete, excise or otherwise remove from Defendant's Website and elsewhere on the Internet all statements published by Defendant or by his employees, agents or servants pertaining to copyright ownership, copyright infringement, counterfeiting, piracy, intellectual theft, and/or the quality or nature of the Plaintiff's products, namely the "CronusMax";

F.      That Defendant be required to pay to Plaintiff such damages as Plaintiff has sustained as a consequence of the copyright infringement, willful misrepresentation of infringement and defamation, such as Plaintiff's lost profits together with all of Defendant's profits, from the acts complained of, together with appropriate interest thereon, or such damages as the Court may deem proper;

G.      That Defendant be directed to deliver to Plaintiff all hardware, firmware, software, computer source code and computer programs that are or have ever been used by Plaintiff, Techart and/or Defendant in any such "video game controller transformation system" as described above;

H.      For an increase in damages of the amount found or assessed as a result of Defendant's willful copyright infringement, misrepresentation of infringement and defamation;

I.      That Defendant be required to pay Plaintiff, 9089756 Canada, Inc., the costs of this action and Plaintiff's reasonable attorney's fees; and

J.      That the Court grants Plaintiff, 9089756 Canada, Inc., such other and further relief as the Court may deem just and proper.


Dated:  August 4, 2015
        New York, New York

                        s/Gloria Tsui-Yip/
                        GLORIA TSUI-YIP
                        WENDI OPPER UZAR
                        Miskin & Tsui-Yip LLP
                        1350 Broadway, Suite 802
                        New York, New York 10018
                        (t) (212) 268-0900
                        (f) (212) 268-0904
                        Gloria@mt-iplaw.com

                        Attorneys for Plaintiff
                        9089756 Canada, Inc.